IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE MOORE, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 16 C 7553 |
| v. | ) ) | Judge Der-Yeghiayan |
| LIBERTY POWER HOLDINGS LLC, a Delaware limited liability company, and N S UNIVERSAL ENTERPRISE, INC. d/b/a Intersoft BPO Solutions, | ) ) ) ) ) ) | Magistrate Weisman |
| Defendants. | ) ) | Class Action Jury Trial Demanded |

### AMENDED CLASS ACTION COMPLAINT

Plaintiff George Moore ("Plaintiff"), by his attorneys, Markoff Leinberger LLC, states as follows for his Amended Class Action Complaint against Liberty Power Holdings LLC ("Liberty") and N S Universal Enterprise, Inc. d/b/a Intersoft BPO Solutions ("Intersoft") (collectively, "Defendants").

### NATURE OF THE CASE

1. This is a consumer class action based upon Defendants' violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"). Defendants, or people acting on Defendants' behalf, called Plaintiff and other putative class members on their residential telephone lines using an artificial or prerecorded voice without their prior express consent and called Plaintiff and other putative class members on their residential telephone lines more than once in a 12 month period despite those lines being on the national Do Not Call registry. Defendants willfully chose to ignore compliance with the TCPA. As such, Defendants willfully inundated Plaintiff and other putative class members with illegal telemarketing calls.

1

**PARTIES**

2. Plaintiff is an individual who resides in this district.

3. Liberty is a Delaware limited liability company with its principal place of business in Ft. Lauderdale, Broward County, Florida.

4. Intersoft is a Texas corporation with its principal place of business in Plano, Collin County, Texas.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

6. Venue is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. §§1391(b) because a substantial part of the events giving rise to the claims occurred in this judicial district.

**COMMON FACTS**

7. Liberty is an alternate retail electric supplier that sells the commodity electricity to end-users.

8. Liberty markets its products through "Sales Channels," which are separate entities that sell Liberty's electricity products.

9. Liberty refers to the Sales Channel entities as "Channel Partners."

10. Some Channel Partners market Liberty's products using telemarketers to make outbound sales calls.

11. At all relevant times, Intersoft was a Liberty Channel Partner.

12. At all relevant times, Intersoft employed or contracted telemarketers in, on information and belief, Lahore, Pakistan to sell Liberty's products.

13. Liberty expressly authorized Intersoft to use telemarketers to sell Liberty's products.

14. Liberty knew about, and consented to, Intersoft using telemarketers to sell Liberty's products.

15. Liberty provided training to Intersoft on how to sell Liberty's products.

16. Liberty provided leads for Intersoft to call to sell Liberty's products.

17. Liberty wrote the telemarketing scripts for Intersoft to use to sell Liberty's products.

18. Liberty provided other resources and assistance to Intersoft to assist in selling Liberty's products.

19. Intersoft's telemarketers advised prospective customers that they were calling on behalf of Liberty.

20. Intersoft's telemarketers did not disclose that they were calling on behalf of Intersoft.

21. Liberty did not adequately oversee Intersoft's telemarketing operations.

22. Liberty did not verify that Intersoft's telemarketers complied with the TCPA.

## COUNT I
### Violations of the TCPA

23. Plaintiff incorporates herein by references paragraphs 1-22.

24. 47 U.S.C. § 227(b)(1)(B) makes it unlawful for any person

> to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B).

25. On November 13, 2015 at 9:53 a.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

26. On December 18, 2015 at 3:47 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

27. On January 19, 2016 at 11:10 a.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

28. On February 11, 2016 at 6:25 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

29. On March 4, 2016 at 10:14 a.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

30. On March 18, 2016 at 6:32 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

31. On April 11, 2016 at 3:43 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

32. On April 20, 2016 at 1:49 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

33. On May 2, 2016 at 5:06 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

34. On May 6, 2016 at 1:14 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

35. On May 11, 2016 at 3:04 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

36. Each of the aforementioned calls was made by Defendants or their authorized agents.

37. Each of the aforementioned calls used an artificial or prerecorded voice to deliver a message that Defendants, or their agents, were attempting to sell a potential discount on electricity.

38. Plaintiff did not give Defendants or their agents his prior express consent to make any of the aforementioned calls.

39. None of the aforementioned calls was initiated for emergency purposes or exempted by rule or order of the Federal Communications Commission.

40. Plaintiff brings this action individually and on behalf of the following putative Artificial Voice Class:

> All persons within the United States who received, since July 26, 2012, one or more telephone calls by, or on behalf of, Liberty Power Holdings LLC ("Liberty"), that were made using an artificial or prerecorded voice and for which (a) the called telephone numbers appear in the records of Liberty, its agents, its Sales Channel Partners, its telephone carrier(s) or the telephone carriers of Liberty's call centers or (b) for which the called persons' own records prove that they received such calls.

41. The Artificial Voice Class is so numerous that joinder of all individual members in one action would be impracticable, given the expected Artificial Voice Class size and modest value of individual claims. On information and belief, there are more than 100 persons meeting the above-referenced Artificial Voice Class definition. Artificial Voice Class members can be identified through Defendants' records.

42. Plaintiff's claims are typical of the claims of the Artificial Voice Class members, as they are based on the same legal theory and arise from the same unlawful and willful conduct.

43. There are common questions of law and fact affecting members of the Artificial Voice Class, which common questions predominate over questions that may affect individual members. These common questions include, but are not limited to:

5

    a. Whether Defendants made non-emergency telephone calls to Artificial Voice Class members' residential telephone lines using an artificial or prerecorded voice;

    b. Whether Defendants had express consent of Artificial Voice Class members to receive such calls;

    c. Whether Defendants acted knowingly or willfully; and

    d. Whether Defendants should be enjoined from making non-emergency telephone calls to residential telephone lines using an artificial or prerecorded voice.

44. Plaintiff will fairly and adequately represent the Artificial Voice Class members. Plaintiff has no interests that conflict with the interests of Artificial Voice Class members. Plaintiff has retained counsel experienced in handling consumer class actions. Neither Plaintiff nor his counsel has any interests that might cause them not to pursue these claims vigorously.

45. This action should be maintained as a class action because the prosecution of separate actions by individual Artificial Voice Class members would create a risk of inconsistent or varying adjudications with respect to individual members that would establish incompatible standards of conduct for the parties opposing the Artificial Voice Class.

46. Whether Defendants failed to comply with 47 U.S.C. § 227(b)(1)(B) can be easily determined by a review of its policies and records.

47. A class action is a superior method for the fair and efficient adjudication of this controversy, particularly given the modest size of claims. Management of the Artificial Voice Class claims is likely to present significantly fewer difficulties than those presented in many individual claims.

48. Defendants made the aforementioned calls to Plaintiff and similar calls to Artificial Voice Class members knowing that they were using an artificial or prerecorded voice.

6

49. Defendants were aware, prior to making the aforementioned calls to Plaintiff and similar calls to Artificial Voice Class members, that they were prohibited by the TCPA from calling Plaintiff's and Artificial Voice Class members' residential telephone lines using an artificial or prerecorded voice.

50. Defendants knowingly and willfully violated the TCPA.

51. Pursuant to 47 U.S.C. §227(b)(3)(B), Plaintiff and each Artificial Voice Class member is entitled to statutory damages of $500 for each of Defendants' illegal calls.

52. Pursuant to 47 U.S.C. §227(b)(3), Plaintiff and each Artificial Voice Class member is entitled to treble damages of up to $1,500 for each of Defendants' illegal calls.

WHEREFORE, Plaintiff, individually and on behalf of the putative Artificial Voice Class, requests that this Court enter judgment in his favor and against Liberty Power Holdings LLC and N S Universal Enterprise, Inc. d/b/a Intersoft BPO Solutions and award the following:

   a. Statutory damages pursuant to 47 U.S.C. § 227(b)(3)(B);
   b. Treble damages pursuant to 47 U.S.C. § 227(b)(3);
   c. Costs;
   d. An injunction enjoining Defendants from making calls that violate the TCPA in the future; and
   e. Such further relief as this Court deems just and proper.

## COUNT II
### Violations of the TCPA

53. Plaintiff incorporates herein by references paragraphs 1-22.

54. Pursuant to 15 U.S.C. § 6151, the Federal Trade Commission ("FTC") was authorized to implement and enforce a national do-not-call registry.

55. The FTC established a do-not-call registry in 2003.

56. Pursuant to 47 C.F.R. 64.1200(c),

> No personal or entity shall initiate any telephone solicitation to:

7

       \*    \*    \*

    (2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government….

57. On March 30, 2012, Plaintiff registered his residential telephone line, number xxx-xxx-1188, with the national Do Not Call registry ("DNC list").

58. Plaintiff has never removed his residential telephone line from the DNC list.

59. On November 13, 2015 at 9:53 a.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

60. On December 18, 2015 at 3:47 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

61. On December 18, 2015 at 3:54 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

62. On December 18, 2015 at 3:55 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

63. On December 18, 2015 at 3:57 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

64. On December 18, 2015 at 3:58 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

65. On December 18, 2015 at 3:58 p.m. (a second call at that time), Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

66. On December 18, 2015 at 3:59 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

67. On December 18, 2015 at 4:00 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

68. On January 19, 2016 at 11:10 a.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

69. On February 11, 2016 at 6:25 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

70. On February 11, 2016 at 6:31 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

71. On February 11, 2016 at 6:31 p.m. (a second call at that time), Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

72. On February 11, 2016 at 6:32 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

73. On February 12, 2016 at 5:27 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

74. On February 12, 2016 at 5:29 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

75. On February 12, 2016 at 5:29 p.m. (a second call at that time), Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

76. On March 4, 2016 at 10:14 a.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

77. On March 18, 2016 at 6:32 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

78. On April 11, 2016 at 3:43 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

79. On April 20, 2016 at 1:49 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

80. On May 2, 2016 at 5:06 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

81. On May 2, 2016 at 5:12 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

82. On May 2, 2016 at 5:13 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

83. On May 6, 2016 at 1:14 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

84. On May 6, 2016 at 1:17 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

85. On May 6, 2016 at 1:17 p.m. (a second call at that time), Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

86. On May 11, 2016 at 3:04 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

87. On May 11, 2016 at 3:08 p.m., Plaintiff received a telemarketing sales call from Defendants, or on Defendants' behalf, on his residential telephone line.

88. Each of the aforementioned calls was made by Defendants or their authorized agents.

89. None of the aforementioned calls was initiated for emergency purposes or exempted by rule or order of the Federal Communications Commission.

90. Plaintiff brings this action individually and on behalf of the following putative DNC Class:

> All persons within the United States who received, since July 26, 2012, more than one telephone call within any 12-month period by, or on behalf of, Liberty Power Holdings LLC ("Liberty") to a residential telephone line that was registered with the national Do Not Call registry maintained by the Federal Government and for which (a) the called telephone numbers appear in the records of Liberty, its agents, its Sales Channel Partners, its telephone carrier(s) or the telephone carriers of Liberty's call centers or (b) for which the called persons' own records prove that they received such calls.

91. The DNC Class is so numerous that joinder of all individual members in one action would be impracticable, given the expected DNC Class size and modest value of individual claims. On information and belief, there are more than 100 persons meeting the above-referenced DNC Class definition. DNC Class members can be identified through Defendants' records.

92. Plaintiff's claims are typical of the claims of the DNC Class members, as they are based on the same legal theory and arise from the same unlawful and willful conduct.

93. There are common questions of law and fact affecting members of the DNC Class, which common questions predominate over questions that may affect individual members. These common questions include, but are not limited to:

   a. Whether Defendants made telephone calls to DNC Class members' residential telephone lines at times when the lines were registered on the national Do Not Call registry;

   b. Whether Defendants acted knowingly or willfully; and

11

      c. Whether Defendants should be enjoined from making telephone calls to residential telephone lines that are registered with the national Do Not Call registry.

94. Plaintiff will fairly and adequately represent the DNC Class members. Plaintiff has no interests that conflict with the interests of DNC Class members. Plaintiff has retained counsel experienced in handling consumer class actions. Neither Plaintiff nor his counsel has any interests that might cause them not to pursue these claims vigorously.

95. This action should be maintained as a class action because the prosecution of separate actions by individual DNC Class members would create a risk of inconsistent or varying adjudications with respect to individual members that would establish incompatible standards of conduct for the parties opposing the DNC Class.

96. Whether Defendants failed to comply with 47 C.F.R. 64.1200(c) can be easily determined by a review of its policies and records.

97. A class action is a superior method for the fair and efficient adjudication of this controversy, particularly given the modest size of claims. Management of the DNC Class claims is likely to present significantly fewer difficulties than those presented in many individual claims.

98. Defendants made the aforementioned calls to Plaintiff and similar calls to DNC Class members knowing that they were making calls to residential telephone lines registered with the national Do Not Call registry.

99. Defendants were aware, prior to making the aforementioned calls to Plaintiff and similar calls to DNC Class members, that it was prohibited by the TCPA from calling Plaintiff's and DNC Class members' residential telephone lines.

100. Defendants knowingly and willfully violated the TCPA.

101. Pursuant to 47 U.S.C. §227(c)(5)(B), Plaintiff and each DNC Class member is entitled to statutory damages of $500 for each of Defendants' illegal calls.

102. Pursuant to 47 U.S.C. §227(c)(5), Plaintiff and each DNC Class member is entitled to treble damages of up to $1,500 for each of Defendants' illegal calls.

WHEREFORE, Plaintiff, individually and on behalf of the putative DNC Class, requests that this Court enter judgment in his favor and against Liberty Power Holdings LLC and N S Universal Enterprise, Inc. d/b/a Intersoft BPO Solutions and award the following:

a. Statutory damages pursuant to 47 U.S.C. § 227(c)(5)(B);
b. Treble damages pursuant to 47 U.S.C. § 227(c)(5);
c. Costs;
d. An injunction enjoining Defendants from making calls that violate the TCPA in the future; and
e. Such further relief as this Court deems just and proper.

**Plaintiff Demands a Trial By Jury**

GEORGE MOORE, Plaintiff,

By:  s/ Paul F. Markoff
     One of Plaintiff's Attorneys

Paul F. Markoff (IL Atty. No. 6237614)
Karl G. Leinberger (IL Atty. No. 6237537)
Markoff Leinberger LLC
134 N LaSalle St, Ste 1050
Chicago IL 60602
312.726.4162 (p)
312.674.7272 (f)
paul@markleinlaw.com

**CERTIFICATE OF SERVICE**

       I certify that I served a copy of this *Amended Class Action Complaint* on the following electronically by using the CM/ECF system on this 16th day of March, 2017:


Jonathan N. Ledsky (jonathan.ledsky@huschblackwell.com)
Scott J. Helfand (scott.helfand@huschblackwell.com)
Husch Blackwell LLP
120 S Riverside Plaza Ste 2200
Chicago IL 60602

                                                    s/ Paul F. Markoff
                                                    Paul F. Markoff